UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **FUNIMATION ENTERTAINMENT,** § | |
| § | |
| *Plaintiff* § | |
| § | |
| v. § | |
| § | |
| **A.D. VISION, INC., JOHN ROBERT** § | CIVIL ACTION NO. 4:12-cv-1736 |
| **LEDFORD II, AESIR HOLDINGS** § | |
| **L.L.C., SXION 23 L.L.C., SERAPHIM** § | |
| **STUDIOS, L.L.C., VALKYRIE MEDIA** § | |
| **PARTNERS, L.L.C., SENTAI** § | |
| **FILMWORKS, L.L.C., SENTAI** § | |
| **HOLDINGS, L.L.C., and UNIO** § | |
| **MYSTICA HOLDINGS, L.L.C., f/k/a** § | |
| **UNIOMYSTICA, L.L.C. d/b/a** § | |
| **SWITCHBLADE PICTURES,** § | |
| *Defendants.* § | |
| **A.D. VISION, Inc.** § | |
| *Third-party Plaintiff,* § | |
| v. § | |
| **FUNIMATION PRODUCTIONS, LTD.,** § | |
| **ANIMEONLINE, LTD., FUNIMATION** § | |
| **GP, LLC, FUNIMATION LP, LLC,** § | |
| **FUNIMATION HOLDINGS, LLC,** § | |
| **ANIME HOLDINGS, LLC, and GEN** § | |
| **FUKUNAGA,** § | |
| *Third-party Defendants.* § | |
| § | |

## MEMORANDUM & ORDER

Counter- and Cross-Claim Defendants FUNimation Entertainment, FUNimation Productions, Ltd., Animeonline, FUNimation GP, FUNimation LP, LLC, FUNimation Holdings, Anime Holdings, and Gen Fukunaga (collectively "FUNimation") have filed their Amended Motion to Dismiss. Defendants and Cross-Plaintiffs ADV, Inc. and John Ledford (collectively "ADV") have filed a Motion to Exclude Evidence Referred to in

1

FUNimation's Motion to Dismiss. (Doc. No. 35.) For the reasons that follow, ADV's Motion to Strike must be **DENIED**, while FUNimation's Motion to Dismiss must be **GRANTED**.

## I. BACKGROUND

The following facts are uncontested, unless otherwise noted. FUNimation and ADV have been rivals in the Japanese anime industry since the 1990s. FUNimation first filed this case in Harris County District Court in November 2011 to (1) collect a debt from ADV that FUNimation alleges was assigned to it, and (2) to set aside what FUNimation claims was a fraudulent transfer by ADV to avoid paying the debt. After ADV pled a federal claim under the Sherman and Clayton Act in its Counter Complaint, the case was removed to federal court.

Underlying this case is a series of agreements made between Counter-Plaintiff ADV and a Japanese Company known as ARM Corporation ("ARM") beginning in May 2006. (Doc. No. 34.) Under these agreements, ARM provided financing to ADV so that ADV could acquire intellectual property licenses for anime titles. ADV became indebted to ARM, and these debts were secured with security interests in the anime titles that ADV acquired using ARM financing.

In September 2007, ADV defaulted on its payment obligations to ARM. (Doc. No. 13-5, "Rescheduling Agreement".) After ADV failed to cure its default, ARM sent ADV a notice that it was terminating its obligations under the agreements and accelerating ADV's debt. (Doc. No. 13-7.) ARM then took control of the approximately thirty anime titles that ADV had acquired, and began seeking a buyer for them. (Doc No. 13-8, 13-9.) ADV alleges that FUNimation began to discuss the takeover of ADV in December 2008.

ADV alleges that, on April 3, 2008, FUNimation executed in secret a binding letter of intent regarding the acquisition of the ARM license. On April 16, 2008, ADV sued ARM, claiming that it had breached the parties' agreements and committed several torts. *ADV v. ARM Corporation,* Cause No. 2008-23026, in the 234th Judicial District Court of Harris County. (Doc. No. 13-11.) In particular, ADV brought claims for breach of contract, breach of fiduciary duty, failure to provide proper notice of ARM's intended sale of the ARM titles, and seeking to pierce the corporate veil with an alter ego theory. ADV sought a temporary restraining order to prevent ARM from selling the ARM titles. The state court denied injunctive relief. On April 21, 2008, ARM filed a counterclaim against ADV, and applied for a judicial Writ of Sequestration against the ARM Titles. The Court granted ARM's Application, reasoning that:

> ADV has breached the Agreements by failing to make payments. ARM has declared its right to repossession of the Material. The sum of $11,202,361.09, plus reimbursement for Material and Facility Service fees, is due and owing as of April 18, 2008. (Doc. No. 13-13, ¶ 4.)

On May 20, 2008, ARM issued a notice that collateral would be sold on June 3, 2008. (Doc. No. 13-15.) ARM purchased the collateral out of foreclosure for $3,726,355.09, using part of the debt it was owed as the bid price. This amount was higher than the replevy amount that had been set by the court. ADV alleges that the foreclosure was a "sham," was private for the purpose of Chapter 9 of the Texas Business and Commerce Code, and that a deficiency of approximately $7.3 million resulted from the sale. After the sale of the titles, FUNimation and ARM entered into a series of agreements that conveyed the ARM titles to FUNimation. ARM also conveyed ADV's debt to FUNimation.

In this case, FUNimation asks this Court to dismiss all of ADV's claims asserted in the Amended Answer and Counterclaim. If FUNimation's reliance on the factual record requires the motion to be converted to one for summary judgment, FUNimation moves in the alternative under Rule 56.

## II. LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Iqbal*, 129 S. Ct. at 1950 (citation omitted).

Allegations of fraud must meet not only the general pleading standard of Rule 8 but also Rule 9(b). Rule 9(b) further requires a party "alleging fraud or mistake" to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "At a minimum," Rule 9(b) requires the party alleging fraud or mistake to specify the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elec., Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 724 (5th Cir. 2003) (quotations omitted). Rule 9(b)'s particularity requirement is in addition to *Twombly*'s and *Iqubal*'s requirements that a pleading include facts that, taken as true, "state a claim to relief that is plausible on its face." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009)

## III. ANALYSIS

Before discussing the merits of the motion to dismiss, the Court needs to resolve the motion to strike filed by ADV.

### A. Motion to Strike

ADV argues that it is improper for the Court to consider documents from the state court proceeding between ADV and ARM that are referenced in FUNimation's Motion to Dismiss.[1] First, ADV argues that such materials were attached to an earlier filing in this case, rather than directly to FUNimation's motion to dismiss. ADV cites *Scanlon v. Texas A&M University,* 343 F. 3d 533, 536 (5th Cir. 2003) and *Collins v. Morgan Stanley Dean Witter,* 224 F.3d. 496, 498-99 (5th Cir. 2000), to argue that materials must be attached to the motion to dismiss in order to be considered. Although the district court may not go outside

---

[1] ADV does not seek to exclude documents that are referred to in ADV's counterclaim (the Facility Agreement (¶ 31), the Security Agreement (¶ 31), the Sojitz Assignment (¶ 40), the Assignment Agreement (¶ 50), and the Assignment Amendment (¶ 53).

5

the complaint, the Fifth Circuit has "approved the district court's consideration of documents attached to a motion to dismiss." *Collins,* 224 F.3d. at 498-99. However, there is a second basis for a Court to consider a document:

> Normally, in deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint. However, courts may also consider matters of which they may take judicial notice.

*Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996).

*Lovelace* makes it clear that the Court may inquire into documents attached to the complaint *and* consider items subject to judicial notice. "Numerous cases . . . have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." 5B Charles Alan Wright et. al, FED. PRAC. & PROC. § 1357 (3d ed.); *see also Abecassis v. Wyatt*, 785 F.Supp. 2d 614, 649 (5th Cir. 2011) ("There are a number of cases from courts around the country in which SEC filings and other public documents, such as court records, have been considered appropriate to consider in deciding a Rule 12(b)(6) motion."); *Lexicon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 102 F.3d 1524, 1537 (9th Cir. 1996) ("[A]mple authority exists which recognizes that matters of public record, including court records in related or underlying cases which have a direct relation to the matters at issue, may be looked to when ruling on a 12(b)(6) motion to dismiss.") These authorities—which hold that a court may take judicial notice of factual materials and consider them at the 12(b)(6) stage—do not require that the materials be physically attached to the Motion to Dismiss.

ADV's second argument in its Motion to Strike is that the Court should not consider the litigation exhibits because they are not central to ADV's claims. ADV argues

6

that they are alleging only that FUNimation designed an illicit scheme to obliterate competition in the market for Japanese anime, and that the litigation between ARM and ADV is unrelated to this claim. The Court disagrees. Even accepting all factual allegations and inferences in ADV's counterclaim as true, some of ADV's claims are directly linked to the lawsuit between ADV and ARM. The Court may take judicial notice, under Fifth Circuit law, that ADV's claim has been adjudicated. *See First Nat'l Bank of Eagle Pass v. Levine,* 721 S.W.2d 287, 289 (Tex. 1986); *Taylor v. Charter Medical Corp.,* 162 F.3d 827, 829 (5th Cir. 1998) (a court may take judicial notice of a "document filed in another court…to establish the fact of such litigation and related filings.")

The Court recognizes that "[s]uch documents should be considered only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir.1996); see also *Warden v. Barnett*, 252 F.3d 1356, at n. 1 (5th Cir.2001) (unpublished) (no page numbers available); *In re Landry's Seafood Restaurant, Inc.*, No. H–99–2279, 2001 WL 34115784, at *1 n. 8 (S.D.Tex. Feb. 20, 2001). The Court recognizes that ADV and FUNimation fundamentally dispute the nature and effect of the previous ARM/ADV litigation. However, without looking at the truth of the documents' contents, the fact that a judicial proceeding took place can be taken into consideration.

The Court does not find it necessary to take judicial notice of Plaintiff's affidavits in order to rule on the motion to dismiss. Courts generally do not take judicial notice of the facts asserted in affidavits and depositions in ruling on a motion to dismiss. *See Anderson v. Dall. Cnty.,* No. 3:05–cv–1248–G, 2007 WL 1148994, at *4 (N.D.Tex. Apr. 18, 2007) (court chose not to take judicial notice of information in affidavits because it was not

7

generally known or reasonably indisputable). In *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 664-65 (N.D. Tex. 2011), the Court noted that it would not "examine the affidavits in an attempt to test the reasonableness of the inferences suggested in the Amended Complaint. Such an approach would not be consistent with the "sparing" use of judicial notice that is appropriate at the motion to dismiss stage." At the pleadings stage, the Court accepts ADV's Counter Complaint as true, and does not find a need to inquire further into FUNimation's affidavits.

Additionally, the parties dispute whether preclusive effect should be given to the ARM-ADV lawsuit. ADV argues that the state court's order was *ex parte,* and entered without ADV's knowledge. *See Warren v. Sec'y of Health & Human Serivces,* 868 F.2d 1444, 1446-47 (5th Cir. 1989) (holding that an *ex parte* Texas judgment was not res judicata). Additionally, ADV states that the case was dismissed without prejudice and thus, the order should be given no preclusive effect. *See Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.,* 494 F.2d 3, 9 (5th Cir. 1974) ("the voluntary dismissal of the counterclaim without prejudice has no res judicata or collateral estoppel effect.")

FUNimation argues that the state court proceedings were not *ex parte.* While the initial hearing on ARM's Application for Writ of Sequestration was without notice to ADV, ADV then filed a motion seeking review, which the Court rejected, and ADV participated in all the ensuing proceedings. The issuance of the Writ and the state court's directive regarding the foreclosure sale was not *ex parte* (Doc. No. 13-12-18.) Additionally, FUNimation argues that the fact that the ARM-ADV lawsuit was dismissed without prejudice does not affect preclusion, because the rulings issued in connection with sequestration may be given the same preclusive effect as a final judgment, regardless of the

8

disposition of the remainder of the case. FUNimation cites *Norris v. Hearst,* 500 F.3d 454, 461-62 (5th Cir. 2007), which held that, once a court has decided an issue, the plaintiff may not nonsuit and then relitigate the same issue in subsequent proceeding, even when the state law claims had been dismissed without prejudice. FUNimation argues that res judicata applies with respect to any claim that has been adjudicated and is no longer subject to revision, even if the ruling was interlocutory in nature: "once a judge announces a decision that adjudicates a claim that claim is no longer subject to the plaintiff's right to nonsuit," *Id.* at 461. The Court is persuaded that some of ADV's claims may be precluded by the ADV-ARM lawsuit. However, at this time, the Court does not need to resolve the question of whether the state court case should be given preclusive effect. This Memorandum and Order considers only the federal claim, a claim that has not, and could not have been, litigated before. Furthermore, this Order does not rely upon the ARM-ADV litigation.

In conclusion, the Court finds it may take judicial notice of the respective state court filings by ARM and ADV, will not consider the affidavits submitted by FUNimation, and will not resolve the issue of preclusion at this time. The Motion to Strike is **DENIED**.

**B. Motion to Dismiss**

ADV pleads nine claims for relief that fall into six basic categories: 1) federal and state antitrust claims, 2) unfair competition and misappropriation claims, 3) a tortious interference claim, 4) claims under the Uniform Commercial Code, 5) a breach of contract claim, and 6) fraud claims. The Court first considers ADV's federal antitrust claim.

1. **Federal Claims**

ADV alleges violations under the Clayton Act, 15 U.S.C. § 15 and the Sherman Act, 15 U.S.C. §§ 1, 2, 18. Section 4 of the Clayton Act provides a private right of action to

a party who has been injured by an antitrust violation. Sections 1 and 2 of the Sherman Act describe specific antitrust violations that may give rise to injuries that are actionable under the Clayton Act § 4. FUNimation provides three reasons that ADV does not have the right to bring a private action under the Clayton Act: 1) ADV lacks Article III and antitrust standing, 2) *Noerr-Pennington* immunity bars ADV's claim, and 3) ADV fails to plead a relevant market.

As to the argument that ADV lacks both Article III and antitrust standing, the Supreme Court held in *Steel Co. v. Citizens for Better Env't.,* 523 U.S. 83, 103 (1998) that the "irreducible constitutional minimum on standing" contains three requirements—an injury-in-fact, causation, and redressability. FUNimation argues that causation is absent because any injury ADV suffered is not fairly traceable to FUNimation's conduct.

Additionally, FUNimation argues that ADV lacks antitrust standing. To have antitrust standing, a party must do more than meet the basic case or controversy requirement that would satisfy constitutional standing. A party has "antitrust standing" to sue under Section 4 only if it has suffered "antitrust injury." *Associated Gen. Contractors of Cal., Inc. v. Cal State Council of Carpenters,* 459 U.S. 519, 534 (1983). A plaintiff's injury must flow from conduct that harms competition; "[i]t is inimical to [the antirust] laws to award damages for losses stemming from continued competition." *Cargill, Inc. v. Monfort of Colo., Inc.,* 479 U.S. 104, 109-10 (1986).

Antitrust injury is necessary but not sufficient to establish standing. *Id.* at 110 n. 5 (1986). In addition to injury, the party must show that it satisfied a number of prudential considerations aimed at preserving the effective enforcement of the antitrust laws. *Norris,* 500 F.3d at 465 (5th Cir. 2007). For antitrust standing, the court must consider whether a

plaintiff is a "proper plaintiff to sue for damages, examining such factors as (1) the causal connection between the alleged antitrust violation and harm to the plaintiff; (2) the improper motive; (3) the nature of the plaintiff's alleged injury and whether the injury was of a type that Congress sought to redress with the antitrust laws (antitrust injury); (4) the directness with which the alleged market restraint caused the asserted injury; (5) the speculative nature of the damages; and (6) the risk of duplicative recovery or complex apportionment of damages." *Hughes v. Tobacco Institute, Inc.*, 278 F.3d 417, 422 (5th Cir.2001).

FUNimation argues that ADV cannot allege antitrust standing, let alone Article III standing, because nothing FUNimation did caused ADV injury. FUNimation argues that FUNimation was not involved in the chain of events that caused ADV's injury: ADV defaulted on its agreement with ARM; ARM exercised its right to foreclose; ADV was unable to get a temporary restraining order to prevent foreclosure; ARM won a judicial order allowing the foreclosure; ADV failed to post bond to replevy the ARM titles; ARM conducted a public sale and sold the ARM titles to itself; and ADV waived further legal remedies. It was at this point that FUNimation purchased the titles. FUNimation argues that ADV would have suffered this same loss regardless of whether FUNimation or any other party purchased the anime titles.

ADV argues that the question of whether FUNimation caused ADV's claimed losses is a fact issue for trial, and not a basis for granting a 12(b)(6) motion. ADV alleges that it has provided a link between FUNimation and ADV's injuries, by arguing that FUNimation was involved in a continuing anti-competitive scheme that began in 2007. ADV also alleges that it is entitled to losses arising from the sham foreclosure that

FUNimation allegedly conspired to bring about, as part of its anticompetitive scheme. The Court finds, that even if it accepts the allegations as true, ADV lacks standing. Even if FUNimation encouraged or conspired with ARM to foreclose on the anime titles, FUNimation encouraged conduct that was legally permissibly. Once ADV defaulted on the ARM-ADV agreement, ARM had the right to foreclose on ADV's anime titles. Additionally, ADV alleges that FUNimation and ARM were in discussions as of December 2007. However, the rescheduling agreement, which is uncontested by the parties, indicates that ARM first held ADV in default in September 2007, a few months before the alleged talks between FUNimation and ARM commenced (Doc. No. 13-5.) ADV does not provide a plausible basis to find that ARM would not have declared ADV in default, if not for FUNimation's intervention *a few months later*. Even taking ADV's assertions as true, ADV does not appear to have Article III standing to proceed on its antitrust claim.

Furthermore, the Court finds that ADV lacks antitrust standing. ADV has not alleged an injury that harmed competition. Courts typically have permitted competitors to bring antitrust suits only when a rival has engaged in some form of predatory pricing or illegal tying, that is, when the rival has engaged in something more than vigorous price, product or service competition. *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 451 (6th Cir. 2007), *citing*, *e.g., Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 461–79, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992) (illegal tying); *Utah Pie Co. v. Cont'l Baking Co.,* 386 U.S. 685, 696–98 (1967) (predatory pricing); *Spirit Airlines, Inc. v. Nw. Airlines, Inc.,* 431 F.3d 917, 921 (6th Cir.2005) (predatory pricing); *LePage's Inc. v. 3M,* 324 F.3d 141, 155–57 (3d Cir.2003) (illegal tying); *Bell v. Cherokee Aviation Corp.,* 660 F.2d 1123, 1127–32 (6th Cir.1981) (illegal tying).

FUNimation cites *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc*., 429 U.S. 477 (1977), for the proposition that antitrust laws were enacted to protect competition, not competitors. In that case, the defendant bowling equipment manufacturer foreclosed on loans made to failing bowling centers, purchased their assets, and began operating the centers itself. Several competing bowling alleys sued the defendant, claiming that the manufacturer's acquisitions of these bowling alleys threatened or constituted monopoly. Specifically, plaintiffs argued that defendant's acquisitions had the capacity to lessen competition in the markets, as it had driven smaller competitors out of business. If the acquired centers had instead closed down, plaintiffs argued, they would have made increased profits. The Supreme Court held that the plaintiffs lacked antitrust standing because the same injury-in-fact would have occurred had a smaller company purchased the competing business. Although the manufacturer's acquisition of the defaulting bowling centers harmed the plaintiffs, it did not harm competition overall. This case is apposite—while the purchase of the anime titles by FUNimation may have hurt ADV's profits, ADV has not presented a plausible claim that it harmed competition overall.

Similarly, in *Jebaco, Inc. v. Harrah's Operating Co., Inc.,* 587 F.3d 314 (5th Cir. 2009), the Fifth Circuit held that plaintiff's loss of fees might have been an injury to its "competitive position" but was not an injury to competition. *Id.* at 320. In that case, plaintiff Jebaco leased berths on Lake Charles to a third party (Players Lake Charles, Inc.) to operate riverboat casinos. Jebaco was compensated via "per patron" fees. Players assigned its rights to Harrah's Operating Co., Inc. ("Harrah's"), which then sold them to another third party, Pinnacle. These sales had the effect of depriving Jebaco of its per-patron fees. Jebaco sued under Sections 1 and 2 of the Sherman act, alleging that Harrah's

sale to Pinnacle was collusive. Furthermore Jebaco alleged that Harrah's monopolized, attempted to monopolize, or conspired to monopolize the market for gambling licenses, since Harrah's and Pinnacle together earned approximately 60 percent of all gaming revenue generated in Louisiana. The court reasoned that,

> the market division has little or nothing to do with Jebaco's lost per-patron fees. Had Pinnacle remained at Jebaco's preferred berths and kept paying the fees, the alleged market division would still have occurred, and Jebaco would be uninjured. Alternatively, if a different firm had purchased Harrah's assets, it too might have chosen not to operate at Jebaco's preferred berths. No antitrust violation would have occurred, but Jebaco would have suffered the same injury. *Id.* at 320.

Similar reasoning applies to ARM's substitution of FUNimation for ADV as the owner of the anime license. FUNimation's alleged discussions with ARM *after* ADV was in default and its alleged involvement in the foreclosure of the anime titles do not establish antitrust injury. ADV has not argued that FUNimation raised prices for consumers, or engaged in exclusionary conduct in a manner that would affect competition. "Even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws; those laws do not create a federal law of unfair competition or purport to afford remedies for all torts committed by or against persons engaged in interstate commerce." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 225 (1993). ADV's loss was a result of ADV's breach of its agreements with ARM, the subject of the ADV-ARM state court litigation. The Court will not relitigate those claims here. The Court finds that ADV has not sufficiently alleged that FUNimation caused ADV's alleged injuries, nor has ADV alleged that the harms it suffered constituted an *antitrust* injury. Thus, the Court finds that it must dismiss ADV's federal antitrust claim.

Since the Court finds that ADV lacks Article III and antitrust standing, the Court need not reach the question of whether *Noerr-Pennington* immunity applies or whether ADV has successfully pled a relevant market. Without standing, ADV has not pled a plausible federal claim. However, the Court grants ADV leave to amend its Counter Complaint to conform to this Memorandum and Order. The Federal Rules of Civil Procedure provide that "leave (to amend the complaint) shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  "[G]ranting leave to amend is especially appropriate…when the trial court has dismissed the complaint for failure to state a claim." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (citation omitted).  The Court should generally "afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."  *Id*. The Court grants ADV leave to amend its Counter Complaint within 14 days of this Order.

Additionally, the Court notes that, but for ADV's federal claim, this case would not be in federal court. Federal court jurisdiction exists over an entire action, including state law claims, when the federal and state law claims "'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.' " *Carnegie-Mellon University v. Cohill,* 484 U.S. 343, 349 (1988) (quoting *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725 (1966)). So long as one claim in an action presents a federal question on the face of the well-pleaded complaint, a court can exercise jurisdiction over the entire constitutional case or controversy. *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 553-53 (2005).

Section 1367(c) recognizes that supplemental jurisdiction is discretionary in certain circumstances, including where the court dismisses or stays the claims over which it has original jurisdiction. 28 U.S.C. § 1367(c). When those claims falling within a court's original jurisdiction are no longer in the case, the court has authority under § 1367(c) to choose whether to exercise supplemental jurisdiction and has inherent authority to remand the remaining claims to state court. *ESAB Group, Inc. v. Zurich Ins. PLC,* 685 F.3d 376, 393-95 (4th Cir. 2012), *Gray v. Sage Telecom, Inc*., 410 F. Supp. 2d 507, 512-13 (N.D. Tex. 2006) (supplemental jurisdiction over state law claims is a doctrine of discretion, not of plaintiff's right). While the Court grants leave for ADV to amend its Counter Complaint, the Court also advises parties that, if ADV is unable to establish both Article III and antitrust standing, the Court will exercise its discretion to remand this action. Thus, the Court defers its ruling on dismissing ADV's other claims until, and only if, ADV is able to establish a federal claim.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 20th day of May, 2013.

*[signature]*

**KEITH P. ELLISON**
**US DISTRICT COURT JUDGE**